UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
BARBARA ECHEVERRIA and LONG ISLAND
HOUSING SERVICES, INC.,

                              Plaintiff,                 **MEMORANDUM & ORDER**
                                                      CV 07-1369 (WDW)

           -against-

KRYSTIE MANOR, LP, ROLAND CONDE, in
his official and individual capacities, and JOHN
DOE(S), AND JANE DOE(S), (the persons who
were present and committed wrongful acts and
whose names are known by the other Defendants)
in their official and individual capacities,

                             Defendant.
--------------------------------------------------------------X
**APPEARANCES:**
Law Offices of Frederick K. Brewington
50 Clinton Street, Suite 501
Hempstead, NY 11550
Frederick K. Brewington, Esq., Attorney for Plaintiffs

Lester & Associates, PC
600 Old Country Road, Suite 229
Garden City, NY 11530
Roy J. Lester, Esq., Attorney for Defendants

**WALL, Magistrate Judge:**

       Before the court is a motion for summary judgment made by defendants Krystie Manor,

LP and Roland Conde (collectively "Krystie Manor").  *See* Docket Entry ("DE") [50].  Plaintiffs

Barbara Echeverria ("Echeverria) and Long Island Housing Services, Inc. ("LIHS") have opposed

the motion.  For the reasons set forth herein, the motion is granted in part and denied in part.

# BACKGROUND

The material facts, drawn from the Complaint[1], DE [1], and the parties' Rule 56.1

Statements, are undisputed unless otherwise noted.

Krystie Manor is a senior citizen apartment complex. Saepia Aff. ¶4, DE [26]. Plaintiff

Echeverria was 55 years old at the time of the events leading to this litigation. She suffers from

"multiple disabilities including dwarfism, kyphoscoliosis, asthma, arthritis and chronic pain

secondary to radiculopathy." Echeverria Decl. ¶3, DE [32]. She owns a dog that she describes as

a "companion animal . . . medically necessary for emotional support and acts as a service animal

by performing services including, but not limited to, picking up dropped items from the floor and

pulling carts filled with laundry." Id. ¶4.

Echeverria became aware of an apartment for rent at the Krystie Manor complex through

a co-worker. Pls' Counter-Statement of Facts ("Pls' Cntr-Stmt") ¶33, DE [31]. On or about

February 22, 2005,[2] Echeverria met with Barbara Saepia, a manager at Krystie Manor, regarding

the apartment for rent. Defs' Rule 56.1 Stmt ("Defs' Stmt"), ¶10, DE [24]. They met for over an

hour and Echeverria toured the available ground floor unit. Id. ¶¶10-11. Saepia provided

Echeverria with an application and "other paperwork" that would be required to apply for renting

a unit at Krystie Manor. Id. ¶12.

---

[1]As this case was severed from another case, the Complaint is actually entitled "Second Amended Complaint." As it is the only complaint in this action, the court will refer to it simply as the "Complaint."

[2]In her opposition papers, plaintiff has, for the first time, suggested that the date of this meeting was actually February 16, 2005. *See* Echeverria Decl., ¶17. At all times prior to this statement, including in the Complaint and at her deposition, Echeverria has claimed that the meeting took place on February 22, 2005. For purposes of this motion, the court will use the date set forth in the complaint.

While it is undisputed that at the meeting, questions concerning Echeverria's dog were discussed, the content of that discussion is disputed. The parties do not dispute that pets are allowed in the complex. Defs' Stmt ¶15; Pls' Statement of Disputed Facts in Opposition ("Pls' Resp.") ¶15, DE [31]. Saepia informed Echeverria that the rules of the complex required residents to keep dogs on leads in common areas, and to walk dogs outside of the premises to let them urinate and defecate. Defs' Stmt ¶16. Defendants state that Saepia indicated that the requirement that dogs be walked off the property was "for health reasons, to avoid odors and avoid turning the lawn brown." Defs' Stmt ¶17. Echeverria acknowledges that Saepia told her the dog would have to be walked "off the property." Pls' Resp. ¶16. According to defendants, Echeverria told Saepia that "she would not walk her dog outside of the complex, as required . . . and that she wanted to let the dog run loose in the grass." Defs' Stmt ¶18. Defendants also claim that Echeverria never indicated that her wish to walk the dog off premises was due to any disability. *Id.* ¶19. Saepia further claims that she "was not aware of any disability other than Echeverria's short stature." Saepia Aff. ¶10.

Echeverria concedes that she did not, at the initial meeting with Saepia, inform her that her dog was a companion animal as she "did not feel there was any need to inform Ms. Saepia of the fact that her companion was medically prescribed because Krystie Manor permitted pets and no such inquiry was made." Pls' Cntr-Stmt ¶36. Echeverria claims that she never indicated that she would not walk the dog outside the complex, but rather that she was "***unable*** to walk him and would do ***anything*** else she had to, such as use a pooper-scooper and litter box train the companion animal." Pls' Resp. ¶18 (emphasis in original). She further claims to have told Saepia that she could not walk the dog "due to her disability." *Id.* ¶19. Echeverria states that she

told Saepia that she was willing to house train her dog or to follow him in the backyard and pick up his waste. Echeverria Decl. ¶25.

Echeverria claims that Saepia said she would talk to her "constituents" about the other options of "house training the companion or permitting me to use a pooper-scooper in the backyard" and that Saepia would get back to her. Echeverria Decl. ¶ 29. Echeverria left with an application and was told she had two days to complete it. *Id.* ¶21. Defendants "vehemently dispute[] that Ms. Echeverria was ever given an extension of time to submit the application." Defs' Response to Pls' Counter-Statement of Facts ("Defs' Resp.") ¶39, DE [37].

Echeverria claims that later that evening, she spoke again with Saepia, who advised her "that after conferring with her constituents, they were 'uncomfortable' with the situation with the companion animal and that she would not be allowed in, *as per her constituents*." Pls. Cntr-Stmt ¶40 (emphasis in original). Saepia claims that she never spoke with Echeverria again after their initial meeting on February 22nd. Saepia Aff. ¶12. Defendants do not, however, claim that no one spoke to Echeverria on Krystie Manor's behalf, nor do they address the content of this alleged communication since Echeverria identifies Saepia as the woman with whom she spoke. *See* Defs' Resp. ¶40.

Echeverria further claims to have spoken with Saepia a third time at which time "Ms. Saepia told Ms. Echeverria that the apartment was rented and *denied* Ms. Echeverria housing based on the companion animal." Pls' Cntr-Stmt ¶42 (emphasis in original). Defendants again do not address the content of this alleged conversation. Instead, focusing on Echeverria's identification of the speaker as Saepia, they restate that Saepia did not meet or speak with Echeverria after their initial meeting. Defs' Resp. ¶42.

4

It is undisputed that Echeverria never submitted the written application to rent a unit at Krystie Manor. Defs' Stmt ¶20. Echeverria claims that she had already been "denied" the rental based on defendants' decision regarding her dog and that the paperwork was no longer necessary as she had already been rejected as a tenant. Pls' Resp. ¶20. Specifically, Echeverria argues that in the follow-up conversation with Saepia, Saepia informed her "that after communicating with her constituents I was denied the apartment because of the companion." Echeverria Decl. ¶34.

Echeverria informed LIHS Executive Director Michelle Santantonio about her experience with Krystie Manor. Echeverria Decl. ¶43. LIHS had been counseling Echeverria since approximately November 2004 regarding "her fair housing rights and legal rights due to her multiple disabilities." Santantonio Decl. ¶ 5, DE [33]. On or around February 24, 2005, Santantonio called Krystie Manor on Echeverria's behalf. Pls' Cntr-Stmt ¶57. The papers suggest that between February 24th and March 4th, there may have been telephone messages exchanged by Santantonio and/or someone on behalf of Krystie Manor. The parties agree, however, that on March 4, 2005, defendant Roland Conde, President of the Krystie Manor Homeowners Association, returned Santantonio's call and spoke with her. Defs' Stmt ¶22. Santantonio apparently tape-recorded the conversation with Conde without his knowledge.[3]

It is undisputed that the telephone conversation between Santantonio and Conde was the final contact between the parties and that "thereafter, no further communication (written or oral) took place between Plaintiffs and Defendants." Defs' Stmt ¶24. The apartment was subsequently rented to Carol Lindstrom, who had submitted an application on March 2, 2005. *Id.* ¶21.

---

[3]Both parties discuss the content of that conversation at some length. A detailed discussion of that conversation is not, however, necessary to the decision herein.

Plaintiffs originally commenced a single action against both the defendants involved here, as well as Babylon Park, a separate, unrelated housing complex, and its employees. *See* CV 06-1685. The parties entered into a stipulation that dismissed the Krystie Manor defendants from the earlier action and allowed plaintiffs to commence a separate action against them. The stipulation specifically required that "service is required as to each Defendant." Stipulation, CV 06-1685 DE [13]. That stipulation was So Ordered by District Judge Wexler on March 30, 2007, and the Complaint in this action was filed on April 2, 2007. Plaintiffs assert five causes of action in the Complaint: 1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. §3601 et seq.; 2) violation of §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; 3) violation of the Americans With Disabilities Act ("ADA"); 4) violation of Suffolk County Human Rights Law; and 5) violation of New York Human Rights Law, N.Y. Executive Law §296 ("NYHRL"). They seek monetary damages, declaratory relief that defendants' refusal to lease her the property "was discriminatory, unjustified and based on disability," and injunctive relief "as this Court may deem just and proper." Compl. p. 16.

## DISCUSSION

### A.  Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most

favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). To defeat a motion for summary judgment, "the non-moving party must provide this Court 'with some basis to believe that his version of relevant events is not fanciful.'" *Dove v. City of New York*, 2007 WL 805786, at *4 (E.D.N.Y. Mar. 15, 2007)(quoting *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995)(citation omitted)).

A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is

no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Moreover, the non-moving party "must produce evidence in the record and 'may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible.'" *Singh v. New York City Off-Track Betting,* 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005)(quoting *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993)). Where, however, evaluation of the non-movant's proof rests on the credibility of the non-movant versus the movant, a genuine issue exists and summary judgment cannot be granted. "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." *See* Wright, Miller & Kane*, Federal Practice and Procedure,* Vol. 10A, §2726 (quoting Advisory Committee Notes to 1963 amendment of Rule 56(e)). With the summary judgment standards in mind, the court now turns to the issues presented on this motion.

## B.     Standing of Plaintiff LIHS

LIHS is a non-profit corporation whose primary objectives are "to eliminate unlawful housing discrimination, promote racial and economic integration and equal housing opportunities throughout Long Island, encourage the development of low-income and affordable housing, and to educate and assist the public regarding housing rights and opportunities in the region." Defs' Cntr-Stmt ¶¶4-5. Defendants seek to have the claims of plaintiff LIHS dismissed for lack of standing. Defendants argue that LIHS "has shown no facts demonstrating a distinct and palpable injury traceable to the Defendants' actions." Defs' Mem. at 11. LIHS counters that it has "diverted and expended significant resources in seeking to educate and counsel Ms. Echeverria

and then in contacting Defendants as to fair housing rights and obligations to effect voluntary

compliance and gain meaningful access, use and enjoyment of housing critically needed by Ms.

Echeverria."  Santantonio Decl. ¶10.

To have standing, plaintiff must establish (1) that it suffered an injury, (2) that the injury

be fairly traceable to the defendant's conduct; and (3) that the injury is redressable by the

requested relief.  *See In re Catholic Conference,* 885 F.2d 1020, 1023 (2d Cir. 1989)(citations

omitted).  Plaintiff's injury must be "concrete in nature and particularized to them."  *Id.*  An

organization has standing to sue in its own right if "it alleges 'such a personal stake' in the

outcome of the controversy that federal-court jurisdiction is warranted."  *Eastern Paralyzed*

*Veterans Ass'n Inc. v. Lazarus-Burman Assocs.,* 133 F. Supp. 2d 203, 210-11 (E.D.N.Y. 2001)

(quoting *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378-79 (1982)).  In the case of an

organization, "having to divert scarce resources away from other organizational activities as a

result of the challenged conduct may qualify as an injury that confers standing."  *Small v.*

*General Nutrition Cos.,* 388 F. Supp. 2d 83, 94 (E.D.N.Y. 2005)(citing *Havens,* 455 U.S. at 379).

Defendants cite cases issued by courts outside this Circuit holding that an organization's

litigation expenses alone do not constitute injury sufficient to support standing.  *See, e.g., Fair*

*Hous. Council v. Montgomery Newspapers,* 141 F.3d 71, 78 (3d Cir. 1998).  They fail, however,

to address the applicable law in this Circuit.  The Second Circuit has taken "the broader view that

the opportunity cost of diverting resources away from other activities toward litigation, or other

legal efforts to combat the challenged conduct, is a sufficient injury to confer standing on the

organization on its own behalf."  *Small,* 388 F. Supp. 2d at 94 (citing *Ragin v. Harry Macklowe*

*Real Estate Co.,* 6 F.3d 898, 905 (2d Cir. 1993)); *see also Eastern Paralyzed Veterans,*  133 F.

Supp. 2d at 212 (finding that LIHS had standing where it was forced to devote significant resources to investigating defendants' conduct). Applying the law of this Circuit, the court finds that LIHS's alleged injuries are concrete and traceable to defendants, and thus LIHS has standing to sue in its own right.[4] Accordingly, defendants' motion to dismiss LIHS as a defendant is denied.

## C.     Personal Jurisdiction over defendant Conde

This action was commenced after the parties executed a stipulation allowing plaintiffs to sever their earlier action and file a separate case against defendants Krystie Manor, Roland Conde and John and Jane Does. The stipulation specifically required that "service is required as to each Defendant." Stipulation, CV 06-1685 DE [13]. The Complaint was filed on April 2, 2007, and according to the docket sheet, it was served upon defendant Krystie Manor via the New York Secretary of State on April 25, 2007. Aff. of Service, DE [2]. There does not appear to be any dispute that defendant Conde was not personally served with the Complaint in April 2007.

Defendants Krystie Manor and Conde filed an answer containing a Second Affirmative Defense that "plaintiff lacks jurisdiction over defendant ROLAND CONDE." DE [3]. Conde argues in this summary judgment motion that no personal jurisdiction was obtained over him due to plaintiffs' failure to serve him with the Complaint. After this motion was served, plaintiffs, on

---

[4]The court acknowledges that LIHS may have provided a range of services to Echeverria concerning her attempts to secure housing beyond the apartment at Krystie Manor. The extent to which LIHS's claimed injuries are directly attributable to Echeverria's claims against Krystie Manor as opposed to her issues regarding other housing complexes goes to the question of damages, not standing, and as such, may be addressed at trial.

April 19, 2008, attempted to "cure[] the defect" and served Conde.  Pls' Cntr-Stmt ¶32.[5]  In

opposition to the motion, plaintiffs argue that the Complaint was served upon Conde by

providing a copy to his attorney at the start of the case, and that he has waived any jurisdictional

defenses.

Rule 12 provides that a party waives certain defenses by failing to make a motion to

dismiss or to include the defense in a responsive pleading.  Fed. R. Civ. P. 12(h)(1).  Included

defenses are lack of personal jurisdiction, insufficient process, and insufficient service of process.

*See* Fed. R. Civ. P. 12(b) & (h).  Conde argues that he has complied with Rule 12 by asserting

lack of jurisdiction as an affirmative defense in his answer.  He did not, however, assert any

defense of either insufficient process or insufficient service of process.

Asserting a lack of jurisdiction defense does not raise or preserve a defense of

insufficiency of service of process.  *See Federal Home Loan Mortg. Corp. v. Dutch Lane

Assocs.,* 775 F. Supp. 133, 137 (S.D.N.Y. 1991).  While the defenses of lack of personal

jurisdiction and insufficiency of service of process are often related, they are not identical.  *See

Santos v. State Farm Fire & Cas. Co.,* 902 F.2d 1092, 1095 (2d Cir. 1990).  "Questions of

personal jurisdiction go to 'whether the controversy or defendant has sufficient contact with the

forum to give the court the right to exercise judicial power over defendant' . . . whereas questions

of sufficiency of service concern 'the manner in which service has been made and not . . . the

court's power to adjudicate defendant's rights and liabilities.'" *Id.* (quoting 5 C. Wright and A.

Miller, *Federal Practice & Procedure* §1351 at 560, §1353 at 578-79).  Here, Conde does not

---

[5]Conde also contends that he was not served on that date either and disputes the Affidavit
of Service provided by plaintiffs.  *See* Conde Aff. ¶¶3-5, DE [38].

challenge this court's ability to exercise judicial authority over him, but rather claims that there was a defect in the form of service.

As the Second Circuit has clearly stated, "to the extent that a defense of lack of personal jurisdiction is based on delivery of the summons and complaint to a non-agent of the defendant, that basis should be clearly specified." *Santos,* 902 F.2d at 1095**.** Defendant Conde did not clearly specify the basis for his claimed defense of lack of personal jurisdiction, but instead participated in the defense of the litigation, waiting until the instant motion to seek dismissal of the claims against him for failure to serve the complaint. "A defendant cannot justly be allowed to lie in wait, masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the service defect." *Id.* at 1096; *see also Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1303 (2d Cir. 1990)(finding that defendant waived insufficiency of service defense after participating in discovery and saying nothing about the defective service). The court finds that Conde has waived any defense of insufficient service of process and accordingly, his motion for summary judgment for lack of personal jurisdiction is denied.[6]

**D.     Fair Housing Act Claim**

A prima facie case of discrimination under §3604(f) of the FHA requires plaintiff to show that (1) she is a member of a protected class, (2) she sought and was qualified to rent the housing, (3) she was rejected, and (4) the housing opportunity remained available to other renters. *See*

---

[6]Given the finding that Conde has waived his defense of sufficiency of service, the court declines to address plaintiffs' argument that the alleged service of the complaint in April 2008, after the statute of limitations had run against Conde, should relate back to the original filing.

*Elmowitz v. Executive Towers at Lido, LLC.,* 571 F. Supp. 2d 370, 375 (E.D.N.Y. 2008). A plaintiff may establish discrimination under the FHA under three theories: disparate treatment, disparate impact, and/or failure to make a reasonable accommodation. *See Reid v. Zackenbaum,* 2005 WL 1993394, at *3 (E.D.N.Y. Aug. 17, 2005) (citing *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir. 2003)). Here, the plaintiff asserts a reasonable accommodation claim, which requires her to establish (1) that she is handicapped within the meaning of §3602(h) and defendant knew or should have known of this fact; (2) that an accommodation is necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) that such accommodation is reasonable; and (4) that the defendant refused to make the requested accommodation. 42 U.S.C. 3604(f)(3)(B); *see also Prindable v. Association of Apartment Owners of 2987 Kalakaua,* 304 F. Supp. 2d 1245, 1254-56 (D. Hawaii 2003) (granting summary judgment where there was no evidence that plaintiff's dog was a necessary, trained service animal). "To prevail on a reasonable accommodation claim, plaintiffs must first provide the [defendant] an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question." *Tsombanidis,* 352 F.3d at 578.

Upon consideration of the papers in support of and in opposition to this motion, the court finds that genuine issues of material fact exist precluding the entry of summary judgment with respect to plaintiffs' FHA claim. Among the disputed facts are whether defendants knew or should have known of Echeverria's claimed disabilities, whether Echeverria requested a necessary[7] accommodation, and whether defendants denied her request. Accordingly,

---

[7]In this regard, the court notes that Defendants have not argued that Echeverria's dog is not medically required or that it is not a service animal. In one sentence of their Reply, defendants state that "there is no indication as to why it would be a 'reasonable accommodation'

defendants' motion for summary judgment as to this claim is denied. The denial of the motion is without prejudice to renewal at the close of plaintiffs' case.

**E.      Rehabilitation Act §504 Claim**

Section 504 of the Rehabilitation Act provides in pertinent part as follows:

> No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. §794. In order to establish a violation of §504, plaintiff must establish "(1) that [s]he has a disability for purposes of the Rehabilitation Act, (2) that [s]he is 'otherwise qualified' for the benefit that has been denied, (3) that [s]he has been 'denied benefits' solely by reason of [her] disability, and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'" *Flight v. Gloeckler,* 68 F.3d 61, 63 (2d Cir. 1995) (internal citations omitted).

Defendants argue that Krystie Manor does not receive federal financial assistance and thus is not a program or activity within the meaning of the statute. Krystie Manor accepts Section 8 housing vouchers, but has no interaction with the township or entity that granted the Section 8 assistance. *See* Saepia, Dep 52:8-21. Defendants argue that accepting Section 8 vouchers does not, by itself, constitute receipt of federal financial assistance. Plaintiffs counter that the issue of whether defendants received federal financial assistance is a question of fact. The court disagrees.

---

for a person of short stature not to have to walk a pet off the premises . . . as per community rules, which are equally enforceable to all (elderly) tenants." Defs' Reply Mem. at 11. Since the issue was not properly raised or briefed, the court cannot determine whether Echeverria's need for her dog would rise to the level of that requiring a reasonable accommodation. The court notes that she will need to establish this at trial.

Department of Housing and Urban Development ("HUD") has promulgated regulations to effectuate §504 of the Rehabilitation Act. One such regulation provides that an entity or person who receives housing assistance payments under a housing assistance payments program or a voucher program is not a "recipient" of federal financial assistance by virtue of receipt of such payments. *See* 24 C.F.R. §8.3.[8] Plaintiffs do not address this regulation in their papers, but rather generally suggest that receipt of Section 8 vouchers *should* be considered federal financial assistance since that type of aid "is an integral part of the federal housing scheme." Pls' Mem. at 21. They do not refute the plain meaning of the regulation, nor do they provide any case support for their arguments. The court finds that defendants have not received federal financial assistance and as such, plaintiffs cannot establish a violation of §504. Accordingly, defendants' motion for summary judgment as to the claim under §504 of the Rehabilitation Act is granted.[9]

Defendants also argue that the cause of action against Roland Conde must be dismissed since Rehabilitation Act §504 claims may not be asserted against individuals. Plaintiffs cite two cases that suggest that the issue is "not settled." *See Robinson v. Gorman,* 145 F. Supp. 2d 201 (D. Conn. 2001); *Johnson v. New York Hosp.,* 897 F. Supp. 83, 85 (S.D.N.Y. 1995). Many recent cases in this Circuit have held, however, that there is no individual liability under §504 of the Rehabilitation Act. *See, e.g., M.K. ex rel. Mrs. K. v. Sergi,* 554 F. Supp. 2d 201, 230 (D.

---

[8]Interestingly, a question-and-answer on the HUD website seems to address the very scenario presented here. In answer to the question "who are 'recipients' of federal financial assistance?" the site offers, in part, the following: "a private landlord who accepts Section 8 tenant-based vouchers in payment for rent from a low income individual is not a recipient of federal financial assistance." *See* http://www.hud.gov/offices/fheo/disabilities/sect504faq.cfm.

[9]Defendants also argue that Echeverria is not "otherwise qualified" for a benefit that has been denied. In light of the court's finding that Krystie Manor does not receive federal financial assistance within the meaning of §504, the court takes no position on this argument.

Conn. 2008); *Chambers v. Wright,* 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007); *Harris v. Mills,* 478 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2007); *Passante v. R.Y. Mgmn Co.,* 2001 WL 123858, at *4 (S.D.N.Y. Feb. 13, 2001); *Hailed v. New York State Dep't of Corr. Servs.,* 109 F. Supp. 2d 190, 199-200 (S.D.N.Y. 2000). This court agrees with the later line of cases and finds that defendant Conde cannot be liable as an individual under §504 of the Rehabilitation Act.

**F.    Americans with Disabilities Claim**

In their memorandum of law in opposition to this motion, plaintiffs "respectfully withdraw their claims against Defendants pursuant to Title II of the ADA." Pls. Opp. Mem. at 23. Accordingly, this claim is deemed withdrawn.

**G.    State Law Claims**

Plaintiffs further allege that defendants have violated the NYHRL, N.Y. Executive Law §296. The elements of a claim under the NYHRL are the same as under the Fair Housing Act. *See Resnick v. 392 Central Park West Condominium,* 2007 WL 2375750, at *3 (S.D.N.Y. Aug. 14, 2007). Thus, the court finds that there are genuine issues of material fact precluding entry of summary judgment with respect to plaintiffs' discrimination claim under the NYHRL, and defendants' motion for summary judgment as to this claim is denied.

Finally, plaintiffs assert a claim under "Suffolk County Human Rights Law." While the Complaint does not cite to a provision containing this law, plaintiffs in their opposition papers cite Suffolk County Human Rights Commission Local Law No. 51-2006. They do not, however, indicate what provision of that law they are relying upon. The local law does state that it is "substantially equivalent to the federal Fair Housing Act." Laws of Suffolk County, §89-12. A review of the Defendants' arguments in favor of dismissal of this claim mirror those made in

favor of dismissing the FHA and NYHRL claims. Specifically, defendants argue that Echeverria never applied for an apartment and she never requested a reasonable accommodation. As these are some of the same disputed facts that preclude summary judgment on the FHA and NYHRL claims, the result is the same as to this claim. Defendants' motion for summary judgment on the Suffolk County Human Rights Law claim is also denied.

## CONCLUSION

Defendants' motion for summary judgment on plaintiffs' claim pursuant to §504 of the Rehabilitation Act is granted; the remainder of defendants' motion is denied. Plaintiffs' cause of action under the ADA is deemed withdrawn.

The court will hold a telephone conference on **April 14, 2009 at 10:30 a.m.** to set a trial date. Plaintiffs' counsel shall initiate the call and have all parties on the line before connecting to the court at (631) 712-5720. Plaintiffs' motion to amend the joint pretrial order to include additional materials, *see* DE [42], is granted. Defendants have also requested that they be allowed to amend the joint pretrial order. *See* Ltr, DE [41]. A revised pretrial order, incorporating the parties' proposed additions and revised consistent with this Memorandum and Order, shall be electronically filed prior to the conference.

Dated: Central Islip, New York            **SO ORDERED:**
       March 30, 2009

                                      /s/ William D. Wall
                                     WILLIAM D. WALL
                                     United States Magistrate Judge